**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NANCY DIANNE BUESCHER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:24-CV-538-BJ** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.     STATEMENT OF THE CASE**

Plaintiff Nancy Dianne Buescher ("Buescher") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").  In April 2022, Buescher protectively applied for DIB and SSI, alleging that her disability began on December 31, 2021.  (Transcript ("Tr.") 17; *see* Tr. 177-89.)  Buescher's applications were denied both initially and on reconsideration.  (Tr. 17; *see* Tr. 71-114, 120-29.)  Buescher then requested a hearing before an administrative law judge ("ALJ").  (Tr. 17; *see* Tr. 130-35.)  On October 16, 2023, the ALJ held a telephone hearing, and, on January 8, 2024, found that Buescher was not disabled within the meaning of the SSA.  (Tr. 17-29, 35-70.)  Buescher then filed a request for review of the ALJ's decision to the Appeals Council.  (Tr. 175-76.)  On April 12, 2024, the Appeals Council denied Buescher's request, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-6.)  Buescher subsequently filed this civil action seeking review of the ALJ's decision.

1

## II.     STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. §§ 401-434, and SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381-1385, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any substantial gainful activity.  *See id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *See* 20 C.F.R. §§ 404.1520(a)(iii), (d), 416.920(a)(iii), (d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(a)(iv), (f), 416.920(a)(iv),

(f).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id*.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.    ISSUES

In her brief, Buescher presents the following issues:

1. Whether the ALJ's finding at Step Four that Buescher could perform her PRW, a composite job of nursery attendant and administrative clerk, as it was generally performed in the national economy is legally prohibited;

2.  Whether the ALJ's finding at Step Four that Buescher's past work as a checker II was performed long enough to constitute PRW; and

3. Whether the ALJ's mental RFC determination is inconsistent with the ALJ's finding at Step Two of a severe mental impairment.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 3-11.)

## IV. ALJ DECISION

In a decision dated January 8, 2024, the ALJ concluded that Buescher was not disabled within the meaning of the SSA. (Tr. 17-29.) At Step One, the ALJ found that Buescher had not engaged in substantial gainful activity since December 31, 2021, her alleged onset date of disability, and that she met the insured status requirements of the SSA through December 31, 2026. (Tr. 19-20.) At Step Two, the ALJ found that Buescher had the following severe impairments: "trigeminal neuralgia; chronic headaches; chronic neck pain, secondary to degenerative disc disease of cervical spine; minor degenerative changes in the bilateral hand; and generalized anxiety disorder." (Tr. 20.) Next, at Step Three, the ALJ determined that Buescher did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 20-22.) As to Buescher's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to a range of light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) as follows: She is able to lift and carry 10 pounds frequently and 20 pounds occasionally. She is able to stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. She can frequently reach, finger, and handle and occasionally reach overhead. She can perform detailed but not complex job tasks.

(Tr. 22 (emphasis omitted).)

At Step Four, the ALJ found that Buescher was capable of performing her PRW "as a checker II and the composite job of nursery school attendant and administrative clerk." (Tr. 27 (emphasis omitted).) Accordingly, the ALJ found that Buescher was not disabled from December 31, 2021, through the date of the ALJ's decision. (Tr. 28.)

4

# V.     DISCUSSION

## A.     Past Relevant Work

In her brief, Buescher makes two arguments that remand is required based on the ALJ's finding at Step Four that Buescher could perform her PRW.  First, Buescher argues that the ALJ erred in finding that Buescher could perform her PWR in a composite job comprised of nursery school attendant and administrative clerk as generally performed in the national economy.  (Pl.'s Br. at 3-5.)   Second, Buescher argues that the ALJ erred in finding that Buescher could perform her PRW as a checker II because Buescher had not worked long enough in such position to learn how to perform it.  (Pl.'s Br. at 5-7.)

As set forth above, the ALJ found, at Step Four, that Buescher was able to perform her PRW as a checker II and the composite job of nursery school attendant and administrative clerk. (Tr. 27.)  In support, the ALJ stated:

> The claimant performed the work of a title examiner, of a checker II, and the composite job of nursery school attendant and administrative clerk long enough to learn the requisite skills; her earnings were commensurate with substantial gainful activity; and she performed the work within the last 15 years.  (*See* Exhibits 7D, 3E, and 4E and vocational expert [("VE")] testimony).   These jobs are, therefore, properly considered [PRW].  The vocational expert testified that the title examiner job (*Dictionary of Occupational Titles* ["DOT"][1] code: 111.928-010[2]) is sedentary in exertion per the *Dictionary of Occupational Titles* and has a specific vocational preparation (SVP)[3] of 7; that the checker II job (*Dictionary of Occupational Titles* code 209.687-010) is sedentary in exertion and has a SVP of

---

[1] As noted, DOT is the abbreviation for the "Dictionary of Occupational Titles."  *See* U.S. Dep't of Labor, DOT (4th ed., rev. 1991).  "The Department of Labor promulgated the DOT in order to 'standardize occupational information in support of job placement activities.'"  *Zaicek v. Astrue*, No. 4:09-CV-069-Y, 2010 WL 3384887, at *10 (N.D. Tex. June 23, 2010) (quoting *DOT* at xv).

[2] Based on the VE's testimony at the hearing (*see* Tr. 60), the Court finds that the reference to DOT code 111.928-010 for the job of title examiner is an inadvertent scrivener's error and that the ALJ meant to refer to DOT code 119.287-010.  *See Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015) ("In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent.").

[3] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  (*DOT*, App. C.II.)

4; that the nursery school attendant portion of the composite job (*Dictionary of Occupational Titles* code 359.677-018) is light in exertion and has a SVP of 4; and that the administrative clerk portion of the composite job (*Dictionary of Occupational Titles* code 219.362-010) is light in exertion and has a SVP of 4.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform her [PRW] as a checker II and the composite job of nursey school attendant and administrative clerk as it is generally performed.

I posed a hypothetical question to the vocational expert asking whether a hypothetical individual with the same age, education, and work history as the claimant with the following limitations could perform any of the claimant's past work: The hypothetical individual has the [RFC] to perform a range of light work . . . as follows: She is able to lift and carry 10 pounds frequently and 20 pounds occasionally. She is able to stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. She can frequently reach, finger, and handle and occasionally reach overhead. She can perform detailed but not complex job tasks. In response to the hypothetical question, the vocational expert testified that a hypothetical individual with these characteristics and limitations would be able to perform [PRW] as a checker II and the composite job of nursery school attendant and administrative clerk.

. . . .

The claimant's representative argued that the checker II position would not satisfy the requirements of [PRW] based on the claimant's testimony that she only worked this job for 3 months and she resigned because she was making too many mistakes. The representative goes on to state that according to the *Dictionary of Occupational Titles*, a job with an SVP of 4 requires 3 to 6 months to learn the necessary job skills, and both the representative and claimant acknowledged that she performed the work for 3 months. I was not persuaded by the representative's argument that the job should not be considered [PRW] because the claimant performed the job "for only 3 months and she resigned because she was making errors." Assuming arguendo that I accepted the claimant's contention regarding the checker II job, such argument would not be outcome-determinative in this case because I also found that the claimant is able to perform the [PRW] composite job of nursery school attendant and administrative clerk.

(Tr. 27-28 (footnotes added).)

The Court notes that, as long as there as at least one job that the ALJ properly relied on in making his decision at Step Four, then remand is not required. *See Christensen v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-648-P, 2022 WL 3905491, at *6 n.6 (N.D. Tex. Aug. 1, 2022) (finding

that the Court need not decide whether the claimant met the duration requirement of her position as an administrative assistant because "there was at least one job, executive assistant, that the ALJ could rely on in making his decision at Step Four"). Thus, the Court will first consider Plaintiff's second issue—whether the ALJ erred in finding that Buescher could perform her PRW as a checker II because Buescher had not worked long enough in such position to learn how to perform it.

In her brief, Buescher argues that the occupation of checker II has a SVP rating of 4, which "means that it takes 'over 3 months up to and including 6 months' to learn how to do this occupation." (Pl.'s Br. at 6 (quoting *DOT*, App. C).) Buescher further states:

> [ ] Buescher reported that she worked as a title examiner from April 20, 2015 through December 31, 2021 (Tr. 219, 227). However, she was demoted to an "easier" position at the end of her time as a title examiner (Tr. 55-58). [ ] Buescher worked as a checker II for the last 3 months of her employment. (Tr. 56-58, 60). The vocational expert specifically testified that the job [ ] Buescher performed for "three months" was checker II (Tr. 60).

> [ ] Buescher did not perform work as a checker II for "**over 3 months up** to and including 6 months" (Tr. 56-58, 60). Accordingly, she did not perform this job long enough to learn how to do it. <u>DOT</u> § 209.687-010. Therefore, the occupation of checker II cannot constitute [PRW]. 20 C.F.R. § 416.965(a).

> The ALJ misstated the standard for SVP 4 occupations in his decision (Tr. 28). The ALJ stated that SVP 4 occupations require "3 to 6 months to learn the necessary job skills" (Tr. 28). This is simply not correct. The plain language of the <u>DOT</u> indicates that a claimant must perform an SVP 4 occupation "over 3 months and including 6 months" in order to learn how to do it. <u>DOT</u> § 209.687-010. The ALJ's decision is based on a flawed legal premise and cannot be affirmed.

(Pl.'s Br. at 6 (emphasis in original).)

Buescher claims that the impact of Buescher's difficulty in performing the occupation of checker II without making significant mistakes also supports that she did not perform it long enough to learn how to do it. (*Id.*) Buescher states that the VE "testified not once, but twice, that if an individual performed a job for 3 months but made numerous mistakes during this three-month period and was eventually terminated due to such mistakes, then the SVP 4 standard would not be

met." (Pl.'s Br. at 7.)  Buescher argues that, in other words, "even if the ALJ had correctly stated the standard for SVP 4 work, remand would still be required because an "ALJ cannot simply rely upon part of a [VE]'s testimony." (*Id*.)  Buescher claims that, "[b]ecause the ALJ ignored the [VE]'s testimony regarding the impact of [ ] Buescher's mistakes on her ability to learn her job (Tr. 66, 68), remand cannot be avoided." (Pl.'s Br. at 7.)

The definition of PRW is made up of three parts or requirements: (1) the work must have been performed within the last 15 years ("relevant time period requirement"),[4] (2) the work must have lasted long enough for the person to learn to do it ("duration requirement") and (3) the work must be considered substantial gainful activity ("earnings requirement"). *See Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014) (quoting SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982)); *see also* 20 CFR §§ 404.1560(b)(1), 404.1565(a), 416.960(b)(1), 416.965(a) (2023).  SSR 82–62 states that, as to the duration requirement, the work experience should have been of adequate duration "for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation."  SSR 82-62, 1982 WL 31386, at *2 (S.S.A. 1982).  "The length of time for this depends on the nature and complexity of the work."  *A.K.T. (XXX-XX-XXXX) v. U.S. Comm'r Soc. Sec. Admin.,* No. 09-cv-0680, 2010 WL 3035496, at *1 (W.D. La. Aug. 3, 2010).

---

[4] The Court notes that Social Security Ruling ("SSR") 24-2p, which rescinds SSR 86-8 and rescinds and replaces 82-61 and 82-62, has changed the relevant time period requirement from fifteen years to five years.  *See* SSR 24-2p, 89 Fed. Reg. 48479, 2024 WL 3291790, at *3 (S.S.A. June 6, 2024).  SSR 24-2p became effective on June 22, 2024.  (*Id*. at *48479 & n.1.)  However, because the ALJ's decision in this case was issued on January 8, 2024, SSR 24-2p was not applicable.  *See* SSR 24-2p at 48479 n.1 (stating that this SSR will be applied to: (1) new applications filed on or after June 22, 2024; (2) "in any case in which we make a determination or decision" on or after June 22, 2024; and (3) in any cases in which the Court reverses a final decision and remands for further administrative proceedings after June 22, 2024); *Jovicic v. O'Malley*, No. 24-101-BAJ-EWD, 2025 WL 879568, at *4 n.37 (M.D. La. Feb. 28, 2025).  SSR 24-2p further states, "We expect the Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." (*Id*.)

The regulations state that an ALJ is allowed to use a variety of sources to obtain evidence about a claimant's PRW, including a VE and the DOT. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see also Rosamond v. Comm'r of Soc. Sec.*, No. 1:22-cv-97-JMV, 2023 WL 3222797, at *4 (N.D. Miss. May 3, 2023). The DOT contains a comprehensive list of jobs throughout the United States with detailed descriptions of the requirements of each job. *See*, *e.g.*, *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608-09 (E.D. Tex. 2009). For each job, the DOT sets forth the SVP, which, as set forth above, refers to the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *DOT*, App. C; *see Jackson v. Astrue,* No. 4:11-CV-28-Y, 2011 WL 4943547, at *9 n.8 (N.D. Tex. Aug. 23, 2011), *report and recommendation adopted*, 2011 WL 4940998 (N.D. Tex. Oct. 17, 2011). An SVP of 4, which is required in the checker II position, is defined as "[o]ver 3 months up to an including 6 months." DOT, App. C; *see also* DOT § 209.687-010.

As set forth above, the ALJ found at Step Four that Buescher was not disabled because she was able to perform her PRW as, *inter alia*, a checker II. Buescher challenges that she did not meet one part of the three-part definition of PRW—the duration requirement. Buescher argues that her work as a checker II did not last long enough for her to learn to do it because she only worked in such capacity for three months; thus, such work cannot be considered PRW. (Pl.'s Br. at 5-7.)

In this case, the evidence in the record shows that Buescher worked for a title company from April 20, 2015 through December 31, 2021. (Tr. 219, 227.) At the hearing before the VE, Buescher testified that she worked for most of this time as a title examiner but was moved to the

"easier" position of a checker II, for what she thought was the last three months of her employment. (Tr. 55-61.)

According to the Social Security Program Operations Manual System ("POMS") DI 25005.015(C),[5] as relevant here, "[i]f the claimant performed work that had a continuity of skills, knowledge, and work processes with another job, consider that work when determining if the claimant did the work long enough to learn it, even if the work was outside the relevant period." POMS DI 25005.015(C) (the version in effect on Jan. 8, 2024); *see also* SSR 82-62, 1982 WL 31386, at *2. This section of the POMS set forth the following example:

> The claimant worked from 01/02/88 to 12/20/99 as a machinist. Beginning 12/21/99, he became a lead machinist. He did this job until 02/01/01. The adjudication date for his claim was 01/01/15, at which time the claimant's machinist job was no longer relevant. However, his lead machinist job was still in the relevant period. Although a little over one year may not have been long enough to learn the job of lead machinist, there was a continuity of skills from the claimant's previous work such that he may have done his lead machinist work long enough to have learned the job.

POMS DI 25005.015(C) (the version in effect on Jan. 8, 2024). In addition, SVP information is to be used "only as a guideline to help determine how long it would generally take to learn a particular job." *Id.* "If the [DOT] indicates a high SVP level for a particular job, consider the length of time the claimant did the job and the claimant's education when determining if the work lasted long enough to be relevant. *Id.*

Applying this example to the present case, Buescher worked at the title company from April 20, 2015 to December 31, 2021, a period of over six and a half years. (Tr. 227.) According

---

[5] "POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *7 n.9 (W.D. La. Aug. 10, 2015). In addition, "[g]enerally, a court defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law." *Taylor v. Saul*, No. 4:18-cv-00765-O-BP, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019).

to Buescher's testimony at the hearing before the VE, Buescher worked all of this time, except for the last three months, as a title examiner, a position with a higher SVP of 7.[6]  (Tr. 55-58.)  At the hearing, Buescher further stated that she was moved to the "easier" position of a checker II for the last three months because she was, *inter alia*, making too many errors.  (*Id*.)  Buescher also testified that the checker II position "was more of a cleanup thing[,]" "but it still required all of the same things [as the title examiner position] . . . but it didn't hinge on producing a product . . . for someone that was trying to close on a property."  (Tr. 57.)

In this case, it is clear that the ALJ was aware of and specifically addressed Buescher's argument regarding the duration requirement of the checker II position at both the hearing and in his decision.  (Tr. 28, 60-61.)  At the hearing, the ALJ questioned the VE regarding whether Buescher had worked long enough as a checker II to satisfy the SVP of 4, and the VE responded that, if Buescher "met the three months," then "that would be enough."  (Tr. 60-61.)  Moreover, in his decision, the ALJ stated that he "considered the post-hearing brief and objections to the [VE] testimony submitted by the claimant's representative (Exhibit 15E)."  (Tr. 28.)  The ALJ then stated, "I was not persuaded by the representative's argument that the job should not be considered [PRW] because the claimant performed the job 'for only 3 months and she resigned because she was making mistakes.'"  (Tr. 28.)  Consequently, the VE's testimony constitutes substantial evidence to support the ALJ's decision at Step Four that Buescher could perform her PRW as a checker II.  *See McClintock v. Astrue*, No. 4:10-CV-745-Y, 2011 WL 3702156, at *8 (N.D. Tex. Aug. 4, 2011) (substantial evidence supported ALJ decision at Step Four that claimant could perform PRW where VE specifically testified regarding what claimant was able to with her previous work experience), *report and recommendation adopted*, 2011 WL 3702044 (N.D. Tex.

---

[6] An SVP of 7 is defined as "[o]ver 2 years up to and including 4 years."  *DOT*, App. C.II.

Aug. 22, 2011); *cf. Morales v. O'Malley*, No. EP-22-00467-MAT, 2024 WL 1292378, at *7-8 (W.D. Tex. Mar. 26, 2024) (finding that the ALJ's sole reliance on the VE's testimony was not substantial evidence to meet the duration requirement when the VE did *not* opine whether Plaintiff had worked for a sufficient amount of time to adequately learn the job that was considered PRW nor did the ALJ discuss Plaintiff's education in the ALJ's decision).

Moreover, the Court notes that Buescher's PRW argument is based on her testimony at the hearing that she *thought* she worked three months in the checker II position and not *more than* three months as required for a position with an SVP of 4. (*See* Tr. 57-60.) In other words, Plaintiff wants the Court to remand the case based on, at the most, a couple of days in which Plaintiff may not have worked "over three months" in the checker II position. Even assuming Plaintiff did work in the checker II position for only three months (and not "over" three months), it is clear in this case that there was an obvious continuity of skills from Buescher's work as a title examiner[7] from April 2015 to sometime in 2021 for Buescher to have more than met the duration requirement of the "easier" job of checker II. *See* POMS DI 25005.015(C) (the version in effect on Jan. 8, 2024).

Buescher's final argument on this issue is that, even if the ALJ had correctly stated the standard for SVP 4, remand would still be required because, in essence, "the ALJ ignored the [VE]'s testimony regarding the impact of [ ] Buescher's mistakes on her ability to learn her job (Tr. 66, 68), remand cannot be avoided." (Pl.'s Br. at 7.) Buescher's argument is based on the following testimony at the hearing before the ALJ:

---

[7] Buescher described her work as a title examiner as follows: "Research both unimproved and improved property to ensure such property has a clear title. This required 100% computer usage, using multiple computer monitors [and] data bases." (Tr. 228.) Buescher indicated that, in this job, she used machines, tools, or equipment, used technical knowledge or skills, and did writing, such as completing reports. (*Id.*)

BY ADMINISTRATIVE LAW JUDGE:

Q[uestion:] Ms. Eike,[8] if it's—is it possible that if the training period is for three months, that if a person who did work the job for three months but was then let go basically because of performance, would it be possible that the SVP was not really met then at that point?

A[nswer:] Yes.

. . . .

BY ATTORNEY:

. . . .

Q[uestion:] All right.  And you know, we've heard the testimony from the Claimant that, you know, it sounds like she was making a lot of mistakes on the job and that, you know, her employer, you know, was letting her know that, you know, she wasn't going to be there long with the company because she was making those mistakes.  Could that be an indication that she has actually not met the SVP level and was really on her way to being relieved of her—the position?  Would that be fair to say?

A[nswer:] If that was the case for that particular job, yes.

(Tr. 66-68 (footnote added).)

Based upon this testimony by the VE, Buescher claims that the case must be remanded because the ALJ ignored the VE's testimony regarding the impact of Buescher's mistakes on her ability to learn the job.  (Pl.'s Br. at 6-7.)  However, contrary to Buescher's arguments, the ALJ did not ignore this testimony by the VE.  (Tr. 28.)  In fact, as stated above, the ALJ specifically stated in his decision that "he was not persuaded by the representative's argument that the job should not be considered [PRW] because the claimant performed the job 'for only 3 months and she resigned because she was making errors.'"  (*Id.*)  Moreover, the ALJ stated:

The claimant's subjective complaints and limitations are simply not consistent with her largely stable clinical findings, her longitudinal treatment record, or with the medical opinion evidence as discussed above.  Therefore, the undersigned finds the

---

[8] Shelly Eike ("Eike") was the VE at the hearing.  (Tr. 60.)

claimant's allegations, including her testimony, have limited support and are not fully persuasive.

(Tr. 27.)

In this case, it is clear that the ALJ properly considered Buescher's testimony and allegations but, for reasons set forth and supported by the record, did not find her testimony fully supported by the evidence in the record. *See* SSR 16-3P, 2017 WL 5180304, at *10 (S.S.A. Oct. 25, 2017); *Gillman v. Comm'r, SSA*, No. 4:19-CV-00704-CAN, 2021 WL 1213556, at *7 (E.D. Tex. Mar. 30, 2021) ("[SSR 16-3P] leaves the ultimate credibility determination to the ALJ's discretion.") (internal quotation marks omitted). Consequently, the ALJ did not err at Step Four and remand is not required.[9]

## B.    Severe Mental Impairment Finding at Step Two and RFC Determination

In her brief and reply brief, Buescher also argues that the ALJ's finding at Step Two that Buescher has the severe mental impairment of generalized anxiety disorder is inconsistent with the ALJ's mental RFC determination that did not include any limitations on Buescher's basic work activities. (Pl.'s Br. at 8-11; Plaintiff's Reply Brief ("Pl.'s Reply Br.") at 6-8.) Specifically, Buescher states:

> In completing the [psychiatric review technique ("PRT") required under the special technique for assessing a claimant's mental impairments,] the ALJ found that Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace and adapting or managing herself (Tr. 21-22). Each of these findings independently required a finding that Plaintiff's generalized anxiety disorder was a severe impairment. 20 C.F.R. § 416.920a(d)(1)-(2) . . . .

> At this point it is absolutely crucial to understand fundamental Agency policy. On the mental side, "basic work activities" are defined by the regulations as "understanding, carrying out and remembering simple instructions," "use of judgment," "responding appropriately to supervision, coworkers and usual work

---

[9] Because the Court has found that the ALJ did not err in finding Buescher could perform her PRW as a checker II, it will not consider whether the ALJ erred in finding that Buescher could perform her PRW on the composite job of administrative clerk and nursery school attendant. *See Christensen*, 2022 WL 3905491, at *6 n.6.

14

situations," and "dealing with changes in a routine work setting." 20 C.F.R. § 416.922(b)(3)-(6); SSR 85-15, 1985 WL 56857, *4.[10] The presence of a severe mental impairment means that **as a matter of law** the claimant's ability to perform basic work activities is significantly limited. 20 C.F.R. § 416.922(a) . . . .

This crucial point of law is not up for debate. This is not about whisper down the lane games played with case law. This is about absolutely bedrock Agency policy. . . .

. . . .

Based on the foregoing comprehensive citations of Agency policy, it is beyond any question whatsoever that Plaintiff's admittedly severe mental impairment means that [ ] Buescher's ability to perform the basic work activities necessary for unskilled work was significantly limited. Any suggestion to the contrary by SSA's attorneys would be an intentional effort to distort core Agency policy.

The problem for SSA here is that the ALJ's RFC finding is inconsistent with the ALJ's own prior finding of a severe mental impairment. The ALJ's RFC finding contains no limitations whatsoever on the claimant's ability to perform basic work activities. The only mental limitation adopted by the ALJ was a restriction to "detailed but not complex job tasks" (Tr. 22).

There is not a single limitation in this RFC on the ability to perform any basic work activities (Tr. 22). First, and most importantly, there is no limitation whatsoever on the ability to understand, carry out and remember **SIMPLE** instructions. 20 C.F.R. § 416.922(b)(3). Quite to the contrary, the ALJ not only finds that [ ] Buescher can perform all simple work, but also detailed work (Tr. 22). Therefore, instead of limiting the capacity to perform simple work, which the PRT findings here required, the ALJ explicitly found that Plaintiff is capable of **more than** simple work (Tr. 22). This alone shows an unacceptable contradiction between the ALJ's PRT and severity findings and his RFC finding. The problems and self-contradictions continue.

(Pl.'s Br. at 8-10 (emphasis in original).)

---

[10] The Court notes that, contrary to Plaintiff's contentions, "basic work activities" is actually defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R.§§ 404.1522(b), 416.922(b). The regulations then proceed to list *examples* of "basic work activities" to include such things as understanding, carrying out, and remembering simple instructions; use of judgment; and responding appropriately to supervision, co-workers, and usual work situations. *Id.*

RFC is what an individual can still do despite his limitations.[11]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[12] factors to be considered, and it is based upon all of the relevant evidence in the record.  *Id.* at 3-6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  *See* 20 C.F.R. §§ 404.1529(a) 416.929(a); SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* SSR 96-8p, 1996 WL 374184, at *5.  The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence.  *See e.g.*, SSR

---

[11] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.* at 461.

[12] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The Court notes that federal regulations require the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). For most mental impairment listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[13] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2), (c), 416.920a(b)(2), (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others;

---

[13] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[14]   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920(a)(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

In this case, the ALJ found at Step Two, as stated above, that Buescher had the severe mental impairment of generalized anxiety disorder.  (Tr. 20.)  The ALJ then completed the requisite analysis required under the "special technique."  (Tr. 22.)  In evaluating Buescher's mental impairments under the "paragraph B" criteria, the ALJ found that Buescher had a mild limitation in her ability to understand, remembering, or apply information and interact with others and a moderate limitation in her ability to concentrate, persist, or maintain pace and adapt or manage

---

[14] As set forth above, these four functional areas are known as the "paragraph B" criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E.  The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.*  "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

herself. [15]  (Tr. 21-22.)  Next, in analyzing whether Buescher's mental impairment met or equaled

a listed impairment at Step Three, the ALJ found that the "severity of the claimant's mental

impairment does not meet or medically equal the criteria of listing 12.06."  (Tr. 21.)  As to

Buescher's mental RFC, the ALJ found, based on all the evidence,  that Buescher had the RFC to

perform light work except that she can "perform detailed but not complex job tasks."  (Tr. 22; *see*

Tr. 22-27.)

As set forth above, Buescher emphatically argues that, because the ALJ found in the

"special technique" that she had moderate limitations in two of the "paragraph B" functional areas

and, thus, had a severe mental limitation at Step Two, the ALJ should have found a limitation in

performing one of the basic work activities (examples of which are listed in 20 C.F.R. §§

404.1522(b), 416.922(b)) in the RFC determination.  (Pl.'s Br. at 10-13.)  The Court notes,

however, that Buescher does not cite to any cases in her brief that support her argument.  Moreover,

there are several case in this district that have considered Buescher's exact argument and found it

unpersuasive.  *See*, *e.g.*, *James S. Dudek*, No. 4:24-CV-000588-BU, 2025 WL 1869440, at *3-5

(N.D. Tex. July 7, 2025) (Parker, Mag.); *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-cv-00930-BP,

2025 WL 1268116, at *3-6 (N.D. Tex. May 1, 2025) (Ray, Mag.); [16] *Julie H. v. Kijakazi*, No. 1:22-

CV-00145-H-BU, 2023 WL 8183822, at *5 (N.D. Tex. Nov. 27, 2023) (Hendrix, JJ.); *Sandra J.*

*B. v. Kijakazi*, No. 1:21-CV-00038-BU, 2022 WL 2919491, at *3-6  (N.D. Tex. July 1, 2022)

(Parker, Mag.), *report and recommendation adopted*, 2022 WL 2918103 (N.D. Tex. July 25, 2022)

---

[15] In this case, while initially stating that the claimant experienced a mild limitation in adapting or managing oneself, the ALJ ultimately found that Buescher was moderately limited in this area.  (Tr. 21-22.)

[16] The Court notes that the opinion in *James S.* was issued on July 7, 2025, and the opinion in *Roberts* was issued on May 1, 2025, which were both after Buescher had filed her brief and reply brief in this case.

(Cummings, JJ.).[17]  The Court, in *Sandra J. B.*, specifically addressed the issue raised by Buescher, stating:

> Plaintiff provides no authority requiring an ALJ, upon finding a severe mental impairment at step two, to adopt a limitation specifically tailored to one of the non-exclusive basic work activities illustrated in Section[s §§ 404.1522(b),] 416.922(b).  Nor does Plaintiff cite authority that mandates remand when there is an inconsistency between a finding of severe mental impairment on the one hand, and the absence of a limitation in performing one of the non-exclusive basic work activities listed on the other.
>
> Plaintiff appears to ask this Court, and without the benefit of authority, to seize upon a perceived inconsistency to conclude that remand is required.  But Plaintiff has not articulated a properly supported legal standard that has been violated.  Nor has she demonstrated how the challenged inconsistency, assuming it exists, deprives the ALJ's decision of the substantial evidence necessary to support it.

*Sandra J. B.*, 2022 WL 2919491, at *4.

Moreover, the Court in *Roberts*, *supra,* considered almost identical factual issues set forth in this case.  In *Roberts*, as in this case, the ALJ found at Step Two that the claimant had the severe mental impairment of anxiety (Tr. 20).[18]  *See Roberts*, 2025 WL 1268116, at *2.  In the analysis required under the "special technique," the ALJ in *Roberts*, just as in this case, also found that the claimant's mental impairments caused a moderate limitation in the functional area of concentrating, persisting, or maintaining pace.[19]  *Roberts*, 2025 WL 1268116, at *3.  Thereafter, in making the mental RFC determination, the ALJ in *Roberts*, just as in this case, limited the claimant to work in which she could perform "detailed but not complex [job] tasks."  *Roberts*,

---

[17]  The undersigned recently analyzed this exact same issue in its July 8, 2025, Amended Findings, Conclusions, and Recommendation [doc. 22] in *Rebecca Ann Hogue v. Commissioner of Social Security*, No. 3:24-cv-01926-K.

[18]  In *Roberts*, the ALJ also found that the claimant had the severe mental impairment of depression.  *Roberts*, 2025 WL 1268116, at *2.

[19]  In this case, the ALJ also found that Buescher had a moderate limitation in the functional area of adapting or managing herself.  (Tr. 21-22.)

2025 WL 1268116, at *2; *see* Tr. 22. The Court in *Roberts*, after analyzing the applicable regulations and the requirements of the "special technique" ultimately found that the ALJ's mental RFC determination did not conflict with the ALJ's conclusion in the special technique that the claimant was moderately limited in maintaining concentration, persistence, or pace. *Id*. at *3-6. A repeat of this analysis is unnecessary, especially in light of the fact that Buescher's attorney was also the attorney for the claimant in *Roberts* (as well as in *Julie H., Sandra J. B.*, and *Rebecca Ann Hogue*, *supra*.) Thus, based on the analysis set forth in *Roberts*, *supra*, the ALJ did not err in formulating his mental RFC determination and remand is not required on this issue. *Id*.; *see also Julie H.*, 2023 WL 8183822, at *5-6; *Sandra J. B.*, 2022 WL 2919491, at *3-6. Specifically, the Court notes that, in this case, the ALJ properly discussed the evidence in the record in making his RFC determination, explained his reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC that the record most supported. *See Muse*, 925 F.2d at 790.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is **AFFIRMED**.

SIGNED July 14, 2025.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE